**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**PAULETTE ABERNATHY,**

        **Plaintiff,**

                                 **Case No. 1:24-cv-162**

   **v.**

                                 **JUDGE DOUGLAS R. COLE**

**CITY OF CINCINNATI, et al.,**

        **Defendants.**

**OPINION AND ORDER**

Defendant Robin Calhoun, acting as an employee of Defendant City of Cincinnati (the City), seized Plaintiff Paulette Abernathy's car. (*See generally* Am. Compl., Doc. 6). Admittedly, the seizure was not entirely out of the blue. Some three weeks earlier, City employees had placed a letter, albeit addressed to Abernathy's landlord, Tranquility Breeze, LLC (Tranquility Breeze), on the car's windshield warning it would be seized. (*Id.* at #43). When that happened, Abernathy contacted the City to seek the vehicle's return. And when that failed, Abernathy sued, asserting six counts under Ohio and federal law. (*See generally id.*). The matter is now before the Court on Defendants' motion to dismiss the Amended Complaint for failure to join a necessary party and/or failure to state a claim. (Doc. 7). For the reasons discussed below, the Court **GRANTS IN PART** Defendants' Motion to Dismiss Pursuant to Federal Rule 12(b)(6) and (7) (Doc. 7) and **DISMISSES** Counts Three (insofar as it claims a violation of Plaintiff's substantive due process rights, but no further) and Six of Abernathy's Amended Complaint (Doc. 6), but otherwise **DENIES** the Motion.

## BACKGROUND[1]

On January 22, 2024, the City placed a Notice of Violation Letter (the Letter) on the windshield of Abernathy's car. (Doc. 6, #43). At the time, the car had an expired license plate. (*See id.* at #44). The Letter stated that the car violated Cincinnati Municipal Code § 511-31, (*Id.* at #43), which prohibits "park[ing] or allow[ing] the storage of any unlicensed or inoperable … motor vehicle in any residence district or commercial property other than in a garage or in a place not open to view from any other … property or any public street or place for longer than three days," Cincinnati Mun. Code § 511-31, https://perma.cc/S6FC-H94D. The Letter also directed the person responsible for the real property on which the car was parked (i.e., Tranquility Breeze, which owned the land) to remove all inoperable or unlicensed vehicles by February 6, 2024. (Doc. 6, #44).

Concluding she was violating the "unlicensed" part of that ordinance, Abernathy renewed her car registration on February 5, 2024. (*Id.*). One week later, she called the City—more specifically, Calhoun—advising that she had obtained current tags for her car.[2] (*Id.*). Calhoun responded that, notwithstanding the new tags, she would have the car towed if Abernathy did not drive the car "to demonstrate

---

[1] Because this case is before the Court on a motion to dismiss, the Court accepts the well-pleaded allegations in the Complaint as true. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). "But in reporting the background here based on those allegations, the Court reminds the reader that they are just that—allegations." *Brave Optical, Inc., v. Luxottica of Am., Inc.*, No. 1:23-cv-793, 2024 WL 3173504, at *1 n.1 (S.D. Ohio June 26, 2024).

[2] The Amended Complaint does not explain how Abernathy came into contact with Calhoun as a consequence of the Letter. It isn't clear if the Letter explicitly listed Calhoun's contact information, or if it provided a general point-of-contact that, in turn, led Abernathy to Calhoun. That said, exactly how she came to speak with Calhoun is not relevant to her claims.

to Calhoun [who was present at the property at the time of the call] that the vehicle operates." (*Id.*). When Abernathy declined to do so, Calhoun made good on her word and had the car seized on February 14, 2024. (*Id.*). And two days later, Calhoun told Abernathy the City had permanently seized the vehicle, such that Abernathy could no longer retrieve it, pursuant to Municipal Code Chapter 758—the City's junk motor vehicle ordinance. (*Id.* at #44–45); Cincinnati Mun. Code Chapter 758, https://perma.cc/PPA4-8JR9. The City never afforded Abernathy a pre- or post-seizure hearing to contest the seizure. (Doc. 6, #46).

Based on those allegations, Abernathy sued the City and Calhoun in the Hamilton County Court of Common Pleas. (Doc. 3, #17). Defendants removed the case to this Court, (Doc. 1), and moved to dismiss the then-operative Complaint, (Doc. 4). Shortly thereafter, at a telephone status conference, Abernathy's counsel notified the Court that Abernathy would be filing an amended complaint, which would moot Defendants' pending motion to dismiss. (4/22/24 Min. Entry).

Abernathy then did so. In the Amended Complaint, she sues the City and Calhoun, naming Calhoun in both her official and individual capacities. (Doc. 6). Based on the allegations described above, Abernathy asserts six counts: one Ohio-law count of conversion, brought against Calhoun in both her individual and official capacities (Count One); one count for violating Abernathy's due process rights under the United States and Ohio Constitutions, brought against all Defendants (Count Two); one count under 42 U.S.C. § 1983 for violating Abernathy's "substantive and procedural due process and property rights" under the United States and Ohio

3

Constitutions, brought against all Defendants (Count Three); one count alleging that Cincinnati Municipal Code § 511-31 and Chapter 758 are unconstitutionally void for vagueness under the United States Constitution (Count Four); one count alleging that those same provisions violate Abernathy's rights under Article I, § 1 of the Ohio Constitution (Count Five); and one count alleging that they are void because they conflict with Ohio law, in violation of Article XVIII, § 3 of the Ohio Constitution (Count Six). (*Id.* at #46–51).

Defendants have now moved to dismiss the Amended Complaint. (Doc. 7). They start by arguing that the Court should dismiss Counts 4–6 of the Amended Complaint under Rule 12(b)(7) because the landowner, Tranquility Breeze, which Abernathy has not joined, is a necessary party to Counts 4–6. (*Id.* at #57–58).[3] This is so, they say, because the City's enforcement action was directed at Tranquility Breeze, not Abernathy. (Doc. 7, #58).

In the alternative, they argue the Court should dismiss the Amended Complaint under Rule 12(b)(6). (*Id.* at #59–63). On this front, they argue that the Court should dismiss the conversion claim because Abernathy did not exhaust her administrative remedies before suing. (*Id.* at #59–60). And they say the Court should dismiss the claims against the City because Abernathy has not alleged that the City acted pursuant to an unconstitutional policy, as *Monell v. Department of Social Services*, 436 U.S. 658 (1978), requires as a precursor to municipal liability. (*Id.* at

---

[3] In their Reply, Defendants concede that Tranquility Breeze is not a necessary party to Counts 1–3. (Doc. 10, #82).

#60). They also say the Cincinnati Municipal Code provisions at issue do not conflict with Ohio law. (*Id.* at #61–62). Finally, they say Calhoun is entitled to statutory and qualified immunity on the individual-capacity claims against her. (*Id.* at #62–63).

Abernathy has since responded, (Doc. 8), and Defendants have replied, (Doc. 10). The matter is now ripe for review.

## LEGAL STANDARD

Defendants argue for dismissal under Federal Rule of Civil Procedure 12(b)(7) or, in the alternative, Rule 12(b)(6). So both standards come into play.

### A.    The Rule 12(b)(7) Standard

"[T]he resolution of the question of joinder under [Federal] Rule [of Civil Procedure] 19, and thus of dismissal for failure to join an indispensable party under Rule 12(b)(7), involves a three-step process." *Keweenaw Bay Indian Cmty. v. Michigan*, 11 F.3d 1341, 1345 (6th Cir. 1993). "First, the court must determine whether the person or entity is a necessary party under Rule 19(a)." *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 666 (6th Cir. 2004). "Second, if the person or entity is a necessary party, the court must then decide if joinder of that person or entity will deprive the court of subject matter jurisdiction." *Id.* "Third, if joinder is not feasible because it will eliminate the court's ability to hear the case, the court must analyze the Rule 19(b) factors to determine whether the court should 'in equity and good conscience' dismiss the case because the absentee is indispensable." *Id.*

For purposes of Rule 19 (and thus Rule 12(b)(7)), two categories of parties are indispensable. One category consists of those parties in whose "absence[] the court

5

cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). The other category consists of those parties that "claim[] an interest relating to the subject of the action," and whose absence "may … impede [that party's] ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B).

As to either category, "[t]he burden is on [the movant] to show that [the absent party] is a necessary party." *Phillips v. Sun Life Assurance Co. of Canada*, 641 F. Supp. 3d 453, 455 (S.D. Ohio 2022). In answering that question, "the court may consider evidence outside the pleadings." *Hensley v. Conner*, 800 F. App'x 309, 312 (6th Cir. 2020). If the movant does not meet its burden, "joinder, as well as further analysis, is unnecessary." *Loc. 670 v. Int'l Union*, 822 F.2d 613, 618 (6th Cir. 1987).

## B. The Rule 12(b)(6) Standard

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "sufficient factual matter ... to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). While a "plausible" claim for relief does not require a showing of probable liability, it requires more than "a sheer possibility that a defendant has acted unlawfully." *Id.* The complaint must allege sufficient facts for the Court to "draw the reasonable inference that the defendant is liable." *Id.* In other words, a plaintiff must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)).

6

To meet this pleading standard, a complaint must contain "either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275–76 (6th Cir. 2010) (citation omitted). And "conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id.* at 276 (cleaned up). In short, an action will be dismissed where "there is no law to support the claims made" or "the facts alleged are insufficient to state a claim." *Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 967 F. Supp. 2d 1164, 1169 (S.D. Ohio 2013).

"In reviewing a motion to dismiss, [the Court] construe[s] the complaint in the light most favorable to the plaintiff, draw[s] all reasonable inferences in its favor, and accept[s] all well-pleaded allegations in the complaint as true." *Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 310 (6th Cir. 2021). But that does not mean the Court must take everything plaintiffs allege as gospel, no matter how unsupported. The Court may disregard "naked assertions" of fact or "formulaic recitations of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (cleaned up). And it has limited scope to consider materials outside the pleadings. *Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023) (cleaned up) ("Generally, in considering a motion to dismiss, the district court is confined to considering only the pleadings .... However, the court may, in undertaking a 12(b)(6) analysis, take judicial notice of matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.").

## LAW AND ANALYSIS

The Court begins with the Rule 12(b)(7) argument. Finding the Defendants' argument on that front unpersuasive, the Court then turns to the Rule 12(b)(6) arguments.

### A.    Rule 12(b)(7)

Defendants claim that the Court should dismiss Counts 4–6 of the Amended Complaint under Rule 12(b)(7) because Tranquility Breeze is a necessary party under both Rule 19(a)(1)(A) and Rule 19(a)(1)(B). The Court disagrees on both fronts. Start with the first. "Rule 19(a)(1)(A) is only concerned with whether [a plaintiff] may receive complete relief from th[e] defendant." *Norfolk S. Ry. Co. v. Baker Hughes Oilfield Operations, LLC*, 443 F. Supp. 3d 877, 884 (S.D. Ohio 2020). "That a judgment here may lead to later litigation involving an absent party does not make that party indispensable, even if such litigation is 'inevitable.' … Rather, the 'complete relief' requirement concerns the ability of the already-included defendants to fully satisfy any judgment awarded to the plaintiff." *Phillips*, 641 F. Supp. 3d at 457 (cleaned up).

Defendants claim Tranquility Breeze is a necessary party under Rule 19(a)(1)(A) because "Plaintiff does not allege that Defendants took any action targeted at her." (Doc. 7, #58). Two problems with that argument. First, the Court struggles to credit, on its face, an argument that Defendants never "took any action targeted at" Abernathy when their actions directly affected Abernathy *by seizing her car. See Target*, Merriam-Webster, https://perma.cc/DKU4-JEJD (defining "target" as

8

"something or someone to be affected by an action or development"). And consider the broader context. Defendants (1) placed the Letter on *Abernathy's* windshield, (2) gave *Abernathy* instructions about how she could avoid seizure of her car, (3) seized *Abernathy's* car, and (4) then refused to return the car *to Abernathy*. Those are all injuries to Abernathy, not to Tranquility Breeze. Moreover, Abernathy is the "owner" of the car, and the one who "park[ed]" it at her residence. Cincinnati Mun. Code § 511-31. Just because the City *addressed* the Letter to Tranquility Breeze does not mean that none of the City's conduct during the enforcement action was "targeted at" Abernathy. *Cf. United States v. Rogers*, No. 1:08-cr-2, 2024 WL 2010935, at *4 (S.D. Ohio May 7, 2024) (construing a motion "using [the Court's] discretion to address substance over form" (quoting *McGlone v. Bell*, 681 F.3d 718, 728 n.2 (6th Cir. 2012)); *accord Prudential Real Est. Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000) ("The label attached to a motion does not control its substance." (cleaned up)). The Court thus construes the City's letter as targeting Abernathy in substance, even if not in form.

Second, even if the City were correct that the enforcement action was "targeted at" Tranquility Breeze, rather than, or in addition to, Abernathy, Defendants still have not explained how Tranquility Breeze's absence would preclude them from "fully satisfy[ing] any judgment awarded to" Abernathy. *Phillips*, 641 F. Supp. 3d at 457 (cleaned up). Nor does the Court see why that would be so. Given that the City reports the car has now been rendered permanently inoperable, Abernathy's relief, should she prevail, would almost certainly take the form of money damages. And Defendants

are perfectly capable of "fully satisfying" any such judgment. For these reasons, Defendants failed to meet their burden to show that Tranquility Breeze is a necessary party. *Id.* at 455. The Court therefore declines to find that Tranquility Breeze is a necessary party under Rule 19(a)(1)(A).

Defendants' Rule 19(a)(1)(B) argument fares no better. That rule requires joinder only if an absent party "claims an interest" in the outcome of an action. Fed. R. Civ. P. 19(a)(1)(B). Under that standard, "a threshold question is whether the absent party has come forward to claim an interest." *Phillips*, 641 F. Supp. 3d at 458 (S.D. Ohio 2022) (collecting cases); *see also Abriq v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:17-690, 2018 WL 10152572, at *2 (M.D. Tenn. Mar. 29, 2018) (collecting cases). Tranquility Breeze has not done so, and thus it is not a necessary party under Rule 19(a)(1)(B), either.

Defendants protest that they "could face a subsequent lawsuit by Tranquility Breeze," especially because Abernathy challenges the constitutionality of two Cincinnati Municipal Code provisions. (Doc. 7, #58). But that does not address their failure to meet the threshold condition for Rule 19(a)(1)(B)—Tranquility Breeze having claimed an interest in the action. Moreover, "Rule 19 does not speak of inconsistent 'results.' Rather, it speaks in terms of inconsistent 'obligations.'" *Bedel v. Thompson*, 103 F.R.D. 78, 81 (S.D. Ohio 1984); *see also Phillips*, 641 F. Supp. 3d at 459 ("The point of [19(a)(1)(B)(ii)] is to protect a party from a situation where a judgment in one court tells the party to perform a given act (like paying [insurance] policy proceeds to [one set of putative claimants]), while another court tells that same

party to engage in a different act" inconsistent with the first court's order, such as paying the same proceeds to a different putative claimant.). And Defendants have not explained why multiple lawsuits challenging the validity of certain Municipal Code sections—some of which might result in courts striking down the provisions and some of which might not, but none of which seem likely to lead to irreconcilable instructions from different courts such as orders to pay the proceeds of the same insurance policy to two different parties—would lead to "inconsistent obligations," rather than mere "inconsistent results." *Bedel*, 103 F.R.D. at 81. Indeed, the principal "obligation" on Defendants here, should Abernathy prevail, would be to write her a check. How that would be inconsistent with any obligation that may arise from another suit is not clear to the Court, and Defendants have offered no explanation on that front. So Defendants have not met the second condition that Rule 19(a)(1)(B)(ii) imposes, either.

In short, "[a] party is not 'necessary' where it has not claimed an interest in the outcome of an action and complete relief can be ordered in its absence." *Century Bus. Servs., Inc. v. Bryant*, 69 F. App'x 306, 311 (6th Cir. 2003). Tranquility Breeze has claimed no interest, and the Court can provide complete relief without its presence, so Tranquility Breeze's absence affords no basis for dismissal.

## B. Rule 12(b)(6)

The Court turns next to Defendants' arguments for dismissal under Rule 12(b)(6). It begins with Defendants' argument that Defendant Calhoun enjoys statutory immunity on the state law claims (Counts One and Two) and qualified

11

immunity on the § 1983 claim (Count Three). The Court then turns to Defendants' substantive arguments for dismissal: first, that Count One should be dismissed because of Abernathy's failure to exhaust administrative remedies; second, that Count Three should be dismissed because Abernathy hasn't sufficiently pleaded a claim for relief under § 1983; and finally, that Count Six should be dismissed because Abernathy's facial challenge to Cincinnati Municipal Code § 511-31 and Chapter 758 under the Ohio Home Rule Amendment fails as a matter of law.

### 1. Abernathy Has Pleaded Sufficient Facts to Overcome Calhoun's Defenses of Statutory Immunity and Qualified Immunity at This Stage.

As an initial matter, Defendants argue that Defendant Calhoun is entitled to both statutory immunity and qualified immunity, requiring dismissal of each claim against her in her individual capacity. (Doc. 7, #62–63). The Court addresses each immunity argument in turn.

### a. Abernathy Has Pleaded Sufficient Facts to Overcome Qualified Immunity With Respect to Her Procedural Due Process Claim.

Defendants argue that Calhoun is entitled to qualified immunity as to Abernathy's § 1983 claim for violating her due process rights. (Doc. 7, #63). So the Court must determine (1) whether Calhoun violated Abernathy's constitutional rights, and (2) whether those rights were "clearly established." *Freeman v. Spoljaric*, 667 F.Supp.3d 636, 651 (S.D. Ohio 2023).

To begin, the Court understands Abernathy to be alleging the Defendants violated her due process rights in two ways. While the allegations are admittedly

somewhat sparse, Abernathy's § 1983 claim seems to allege violations of (1) her right to a pre- or post-deprivation hearing (procedural due process), and (2) her right to be free from arbitrary and capricious deprivations of property (substantive due process). (*See* Doc. 6, #47).

Defendants agree that Abernathy alleged that "Calhoun violated her statutory or constitutional rights," satisfying the first prong needed to overcome qualified immunity. (Doc. 7, #63). Their argument for dismissal instead centers on whether the constitutional rights Defendants allegedly violated were "clearly established." (*Id.*). So that is where the Court will focus its efforts, as well.

A right is clearly established "only when existing precedent has placed the … constitutional question beyond debate." *Wilson v. Gregory*, 3 F.4th 844, 855 (6th Cir. 2021) (cleaned up). Importantly, though, the inquiry "do[es] not require a case directly on point." *Id.* It is enough if "the right's contours [are] sufficiently definite that any reasonable official … would have understood that [she] was violating it." *Id.* (cleaned up).

Start with the substantive due process claim. The Sixth Circuit has clearly established that "[o]ne aspect of substantive due process is the right to be free of arbitrary and capricious action by government actors." *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003) (cleaned up). To be arbitrary and capricious, the executive action at issue must be "conscience shocking." *Id.* (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998)). That "colorful descriptor[]" is a stand-in for "tort law's traditional spectrum of culpability." *Jane Doe v. Jackson Local Sch.*

*Dist. Bd. of Educ.*, 954 F.3d 925, 933 (6th Cir. 2020) (citation omitted). On the bottom end of that spectrum, "negligent conduct will never shock society's conscience." *Id.* On the top end, "[intentional conduct] is the 'most likely to rise to the conscience-shocking level.'" *Id.* (citation omitted). For middling levels of culpability—like deliberate indifference or recklessness—courts employ a case-by-case approach, taking into account factors like the amount of time the public actor had "for reflection and unhurried judgment[]." *Id.*

Abernathy's allegations here run the gamut of those levels of culpability in terms of potentially conscience-shocking executive action. Specifically, she alleges that Calhoun seized her car "with malicious purpose, in bad faith, or in a wanton or reckless manner." (Doc. 6, #47). The first two—malicious purpose and bad faith—allege some measure of intent to harm Calhoun, the type of conduct "most likely to rise to the conscience-shocking level." *Jackson Local Sch. Dist.*, 954 F.3d at 933. The third meanwhile—wantonness or recklessness—alleges a measure of culpability "falling in between" negligence and intent for purposes of the shock-the-conscience test. *Id.*

The problem with her intent-based allegations, though, is that all of the assertions relating to malicious intent or bad faith are conclusory. Beyond its use of those labels, nowhere does the Amended Complaint allege actual *facts* giving rise to a reasonable inference that Calhoun's actions were either malicious or in bad faith. Abernathy perhaps comes closest to meeting the mark when she alleges (1) that "Calhoun removed and seized the vehicle … due to the Plaintiff's manner of speaking

14

to her on the phone," and (2) that "[d]ue to the way she was disregarded by Plaintiff [during that call], Defendant Calhoun maliciously and in bad faith acted to seize the car." (Doc. 6, #45–46). But without any further detail about that call, the Court cannot draw a reasonable inference that Calhoun intentionally decided to harm Abernathy merely because Abernathy had "disregarded" Calhoun, whatever that might mean.

Turning to Abernathy's allegations that Calhoun acted in a wanton and reckless manner, they fail for a more fundamental reason: the lack of a "clearly established" right. While the Supreme Court recognized that "the point of [] conscience shocking [might be] reached when injuries are produced from … recklessness or gross negligence," it also observed that broadly sweeping such conduct under the umbrella of substantive due process "is a matter for closer calls." *Cnty. of Sacramento*, 523 U.S. at 849 (cleaned up). And the Court has not been presented with any "controlling authority or a robust consensus of cases of persuasive authority" making the "close call" that allegations like Abernathy's spell out a violation of substantive due process such that Calhoun would've had "fair warning that [her] conduct was unconstitutional"—as required to overcome qualified immunity. *Guertin v. State*, 912 F.3d 907, 932 (6th Cir. 2019) (cleaned up). Indeed, another district court in this circuit has held that a city's seizure of a junk motor vehicle "despite express representations that it would not be towed … is not the type of arbitrary and oppressive exercise of government power [prohibited by] substantive due process." *Taylor v. City of Falmouth*, No. 03-142, 2005 WL 8165585, at *14 (E.D. Ky. Mar. 9, 2005). While the Court makes no determination regarding that holding's

15

*correctness*, it finds that the holding's *existence* (without meaningful disagreement from higher courts) means that Abernathy had no "clearly established" right sufficient to overcome qualified immunity. So, while Abernathy alleges that Calhoun took her car "in a wanton or reckless manner," (Doc. 6, #47), that bare allegation gives rise to at best a "close call[]," not "clearly established" constitutional wrongdoing. *Cnty. of Sacramento*, 523 U.S. at 849 (cleaned up).

Move to the procedural due process claim. Abernathy fares far better on this front. As the Sixth Circuit recently noted, "[t]he Supreme Court has held that the hallmark of due process is that a deprivation of a property interest must be 'preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Johnson v. City of Saginaw, Michigan*, 980 F.3d 497, 511 (6th Cir. 2020) (citation omitted). So apply that principle here. No one can reasonably dispute that Abernathy had a property interest in her vehicle as its owner. *See Culley v. Marshall*, 601 U.S. 377, 387–88 (discussing procedural due process rights in automobiles and personal property generally in the context of civil forfeiture proceedings). The question then becomes whether Abernathy's right to a pre- or post-deprivation hearing in these circumstances was so clearly established that Calhoun would have known that depriving Abernathy of such process was unlawful. *Wilson*, 3 F.4th at 855. The answer to that question is "yes." The Sixth Circuit has noted that "owners of towed vehicles—whether illegally parked, abandoned or junk—are entitled, at minimum, to post-deprivation notice and a hearing." *Henry v. City of Middletown, Ohio*, 655 Fed. App'x 451, 463 (6th Cir. 2016) (quoting *Propert v. District of Columbia*, 948 F.2d 1327,

1332 (D.C. Cir. 1991)). Given the circuit's unambiguous holding that the practice of "disposing of vehicles seized … without offering any post-impoundment process[] violates Due Process," *Henry*, 655 Fed. App'x at 464, the Court is satisfied that, based on Abernathy's allegations, the procedural due process rights on which Abernathy relies for her § 1983 claim count are clearly established for qualified immunity purposes, at least at this juncture.

In sum, the Court finds that Calhoun is currently entitled to qualified immunity with respect only to Abernathy's substantive due process claim, not her procedural due process claim. That said, Calhoun may re-raise her qualified immunity defense as to the latter claim down the road, when more facts are properly before the Court. *Freeman*, 667 F. Supp. 3d at 656–57 (noting that "summary judgment … presents the earliest point when dismissal for qualified immunity is proper … [unless] plaintiffs present clearly insubstantial claims" (cleaned up)).

### b. Defendant Calhoun Has Not Demonstrated That the Complaint Fails to Allege Any Facts Sufficient to Overcome Her Statutory Immunity.

That brings the Court to the state law claims in Counts One and Two for conversion and violation of state constitutional due process rights, respectively. Defendants argue that these claims should be dismissed as to Defendant Calhoun because she is entitled to statutory immunity. (Doc. 7, #62). The Court disagrees.

Ohio's Political Subdivision Tort Liability Act (PSTLA) "sets forth a comprehensive statutory scheme for the tort liability of political subdivisions and their employees." *Bogan v. Keith*, 2023-Ohio-4159 ¶ 10 (2d Dist.) (citing Ohio Rev.

Code Chapter 2744). PSTLA's immunity rules differ based on the type of entity claiming its protections: municipalities themselves or their individual employees. *Id.* at ¶¶ 10–11 (comparing Ohio Rev. Code § 2744.02(B) (municipal immunity) with § 2744.03(A)(6) (employee immunity)). The municipal immunity analysis is irrelevant here since Defendants raise no claim to immunity on behalf of Cincinnati itself. Only Defendant Calhoun, in her individual capacity, claims immunity. (Doc. 7, #62–63).

As relevant here, municipal employees receive statutory immunity from state tort claims unless "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." *Bogan*, 2023-Ohio-4159 at ¶ 11 (quoting Ohio Rev. Code § 2744.03(A)(6)); *see also Gammarino v. Sycamore Township*, No. 1:22-cv-200, 2024 WL 760097, at *9–10 (S.D. Ohio Jan. 22, 2024).

Defendants argue that Abernathy failed to raise sufficient facts to trigger the exception to employee immunity for claims alleging malice, bad faith, or wantonness or recklessness. (Doc. 7, #62). The Defendants assure the Court—on the basis of a single case citation—that "[c]ourts routinely dispose of claims on the basis of statutory immunity at the motion to dismiss stage." (Doc. 10, #86). Even if that is true, the Court must remain mindful that "[p]laintiffs are not required to meet some heightened pleading standard and … plead specific facts to counteract a possible affirmative defense of … statutory immunity," and that "claims of statutory immunity are more amenable to resolution at the summary judgment stage." *Scharbrough v. S. Cent. Job & Fam. Servs.*, No. 2:20-cv-4527, 2021 WL 2314848, at *20 (S.D. Ohio June 7, 2021).

18

Consistent with the qualified immunity analysis above, the Court finds that Abernathy failed to allege sufficient facts to support an inference of malice or bad faith. But Ohio law doesn't stop there. It also exempts from immunity municipal employees whose actions are reckless. Ohio Rev. Code § 2744.03(A)(6)(b). Reckless behavior is that which "displays conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances." *Wilson* 3 F.4th at 860 (citation omitted).

A brief review of Abernathy's allegations confirms the plausibility of her argument that Calhoun acted recklessly. To start, Abernathy alleges that Calhoun ordered the seizure of her car even after she had complied with Cincinnati Municipal Code § 511-31 by renewing her registration. (Doc. 6, #44). Moreover, Abernathy alleges her car wasn't even seized for the reason Calhoun originally stated (i.e., noncompliance with Cincinnati Municipal Code § 511-31), but on an entirely different basis of which Abernathy was never given notice: Cincinnati's junk motor vehicle ordinance, Cincinnati Municipal Code Chapter 758. (*Id.*; *see also* Doc. 8, #72). So Calhoun allegedly refused to recognize Abernathy's compliance with § 511-31; executed a bait-and-switch from § 511-31 to seizure under Chapter 758, and then refused to honor that Chapter's notice requirements or afford Abernathy a post-deprivation hearing. (Doc. 6, #44–46). Assuming she can prove these facts, a jury could reasonably find that Calhoun was indifferent to or consciously disregarded an obvious risk of harm to Abernathy—in other words, acted recklessly—by seizing her car without authorization to do so and without giving Calhoun the required

19

opportunity to contest the seizure. Because of that, it is impossible for the Court to hold at this point that Abernathy has "failed to allege conduct that a jury might reasonably conclude was … reckless." *Shoup v. Doyle*, 974 F. Supp. 2d 1058, 1090–91 (S.D. Ohio 2013) (holding that the statutory immunity analysis is "a necessarily fact intensive inquiry that may be inappropriate to address on a motion to dismiss").[4]

Since Abernathy's allegations, taken as true, plausibly allege a set of facts that could support a finding of recklessness on Calhoun's part, the Court declines to dismiss the state law claims against Calhoun based on statutory immunity at this point. However, Calhoun may again raise her immunity defense at a later stage, when more facts are before the Court.

### 2.    Abernathy's Failure to Exhaust Essentially Unavailable Administrative Remedies Does Not Warrant Dismissal.

Count One of Abernathy's Amended Complaint asserts a single Ohio-law conversion claim against Calhoun in both her official and individual capacities. Defendants argue that the Court should dismiss this Count in its entirety because Abernathy failed to exhaust her administrative remedies before suing. (Doc. 7, #59–60). Abernathy responds, in part, that "[t]here is no administrative appeal" for

---

[4] The Court's rejection of statutory immunity based on Abernathy's allegations of Calhoun's recklessness is consistent with its acceptance of qualified immunity in light of the very same allegations. The reason Abernathy failed to overcome qualified immunity—but not statutory immunity—by alleging recklessness is because the former doctrine incorporates the separate requirement that the right at issue be "clearly established." It is on that basis, and not because of a failure to allege sufficient facts, that Abernathy couldn't overcome Calhoun's qualified immunity. The statutory immunity analysis incorporates no such requirement, allowing the Court to reach the plausibility of Abernathy's allegations. *Cf. Wilson*, 3 F.4th at 860 (explaining that the determination of qualified and statutory immunity can come out differently on the same facts because "Ohio statutory immunity does not turn on whether a particular right was clearly established").

Cincinnati Municipal Code § 511-31"—the provision the City listed in the Letter, and therefore the one of which Abernathy had notice before the City seized her car. (Doc. 8, #68). And even if there is, the City never advised her of it. (*Id.*). Beyond that, she argues that, to the extent the Defendants are now instead relying on § 758–5 as the basis for the City's seizure authority, they never notified Abernathy that she could have appealed under that provision. (*Id.* at #69).

Abernathy has the better argument. Calhoun did not inform Abernathy that the City had seized her car under Chapter 758 until after it was permanently seized (i.e., rendered inoperable), and at that point, Abernathy no longer had any administrative recourse. *See* Cincinnati Mun. Code § 758-5 (right to appeal notice of violation expires 168 hours—or seven days—after receipt of the notice, after which seizure is authorized with no post-seizure administrative process provided). Abernathy cannot reasonably be expected to intuit that the City was, in fact, confiscating her car under a different provision than the one it cited. Nor can she be faulted for failing to exhaust administrative remedies provided by a provision Defendants did not say they were enforcing, and which the Cincinnati Municipal Code did not state was cross-applicable to other provisions (like § 511-31, the provision Abernathy thought the City was enforcing against her). *See Englewood v. Turner*, 858 N.E.2d 431, 435 ("Turner … was provided with no notice of any right to a hearing or to present evidence, and Englewood's Property Maintenance Code did not provide for a procedure to ensure these rights. The trial court erred when

it … granted summary judgment … on a finding that Turner had failed to exhaust administrative remedies.").

In short, the failure-to-exhaust argument is unpersuasive, so the Court declines to dismiss Count One.

### 3. Abernathy's § 1983 Claims are Sufficiently Pleaded to Satisfy *Monell*.

The Court turns next to Count Three: a § 1983 claim against the City for violating Abernathy's "substantive and procedural due process and property rights secured by Article 1 of the Ohio Constitution and the 4th, 5th and 14th Amendments of the Constitution." (Doc. 6, #48). The Motion to Dismiss argues only that "Plaintiff fails to identify a specific City policy that was the 'moving force' behind the alleged constitutional violations," which means she cannot satisfy *Monell*'s demands. (Doc. 7, #60). So that is the only argument the Court considers. *Gray*, 2024 WL 2882645, at *3 (noting the party-presentation principle). And because it is a nonstarter for the reasons described below, Count Three also survives.

"A viable § 1983 claim against a governmental entity must allege (1) a constitutional violation, which (2) was directly caused by a municipal policy or custom." *Stager v. Hanshaw*, No. 1:23-cv-120, 2024 WL 1556708, at *4 (S.D. Ohio Apr. 10, 2024) (citing *Hardrick v. City of Detroit*, 876 F.3d 238, 243 (6th Cir. 2017)). As to the latter, "[t]here are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). A plaintiff may prove that a defendant has an actionable, unconstitutional "policy" or "custom" in place by demonstrating: "(1) the existence of

an illegal official policy or legislative enactment; (2) that an official with final decision[-]making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas*, 398 F.3d at 429).

Abernathy is proceeding under the first avenue: the existence of an illegal official policy or legislative enactment. As to the "official" portion of that standard, Abernathy points to two portions of the Cincinnati Municipal Code: § 511-31 and Chapter 758. And, as to the "illegal" portion of that standard, the heart of this case (and of all of Abernathy's other allegations) is about exactly that question: whether those Cincinnati Municipal Code sections are illegal. Abernathy has made numerous arguments about why the City's policies based on those Municipal Code sections are illegal as written and applied. And Defendants' only responses are to (1) claim that Abernathy's responses are insufficiently specific, and (2) contend that Cincinnati Municipal Code § 758-2 does not conflict with the Ohio Revised Code. (Doc. 7, #60–61). The first is unpersuasive and the second, even if true, does not rebut the broader argument that the City's policies are illegal as a matter of federal law (which is what matters for *Monell* purposes). The Court therefore declines to dismiss Count Three.

### 4. Abernathy's Claim that Chapter 758 Runs Afoul of Ohio's Home Rule Amendment Fails as a Matter of Law.

Abernathy's last three counts—Counts Four through Six—each raise a facial constitutional challenge to the Cincinnati ordinances under which her car was seized. (Doc. 6, #49–51). Defendants only move to dismiss the last of the three: Count Six.

(Doc. 7, #61). Therefore, the Court does not reach the plausibility of Abernathy's allegations under Counts Four and Five.

In Count Six, Abernathy argues that Cincinnati Municipal Code Chapter 758 is unconstitutional under Ohio's Home Rule Amendment. (Doc. 6, #50–51).[5] Defendants assert that it isn't. (Doc. 7, #61–62; Doc. 10, #85–86). They have the better argument, so the Court dismisses Count Six of the complaint.

Ohio's Home Rule Amendment empowers municipalities to "exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary, and other similar regulations, as are not in conflict with general laws." Ohio Const. sec. 3 art. XVIII; *see also Mendenhall v. Akron*, 881 N.E.2d 255, 260 (Ohio 2008). The Ohio Supreme Court set out a three-part test to evaluate municipal ordinances for consistency with the Home Rule Amendment, "question[ing] whether (1) the ordinance is an exercise of the police power, rather than of local self-government, (2) the statute is a general law, and (3) the ordinance is in conflict with the statute." *Id.*

Defendants focus their argument exclusively on the last prong: whether the ordinance at issue conflicts with a statute. (Doc. 7, #61–62). So the Court assumes, without deciding, that the first two prongs are satisfied. The third prong itself can be

---

[5] The final paragraph under this count alleges that "[Cincinnati Municipal Code] Chapter 758 *and Sec. 511-31* are … [in] conflict with Ohio general law." (Doc. 6, #51 (emphasis added)). No other paragraph in that count mentions § 511-31—instead, the rest of the count focuses exclusively on Chapter 758. Moreover, Abernathy's response to the motion to dismiss argues only that Chapter 758 is unconstitutional under the Home Rule Amendment. Therefore, the Court takes the statement that "Sec. 511-31 … conflict[s] with Ohio general law" as abandoned by the plaintiff or, at the very least, insufficiently pleaded to survive a motion to dismiss.

satisfied in three ways: if the ordinance and statute impose contrary directives; if the ordinance conflicts with the statute "by implication"; or if the ordinance imposes penalties of a different nature than the statute. *Mendenhall*, 881 N.E.2d at 262–64.

To assess conflict, the Court begins by detailing the relevant provisions of Chapter 758 and the three allegedly conflicting provisions of the Ohio Revised Code that Abernathy identifies, Ohio Rev. Code §§ 4513.63–65. Each regulates "junk motor vehicles," (JMVs), but defines them somewhat differently. Chapter 758 defines JMVs as those that: (1) have been left on private property (or various types of public property) for more than 48 hours; (2) are greater than three years old; (3) are extensively damaged; and (4) have a fair market value of $1,500 or less. Violators are subject only to civil penalties. *See generally* Cincinnati Mun. Code Chapter 758. The Ohio statutes' definitions are materially identical, though split out into three subcategories to correspond to different penalty regimes. The first applies to JMVs abandoned (i.e., without the property possessor's permission) on private property (or various types of public property) for more than 48 hours. Ohio Rev. Code § 4513.63. Violators fitting that bill are subject to civil penalties. *Id.* The second applies to JMVs abandoned willfully on private property for more than 72 hours (or on various types of public property for more than 48 hours). Ohio Rev. Code § 4513.64. Violators fitting that definition—which adds the requirement of willfulness—are subject to a minor misdemeanor. *Id.* And the third applies to JMVs left willfully (i.e., with the property possessor's permission) on private property for more than 72 hours. Ohio Rev. Code

§ 4513.65. Violators with that subtype of JMV are also subject to a minor misdemeanor. *Id.*

As the differences are what matters for conflict purposes the Court sums them up here: while *all* JMVs left on private property for more than 48 hours—regardless of culpability or permission—give rise to potential civil penalties under the Cincinnati Municipal Code, the Ohio statutes draw three separate categories as part of a more granular penalty regime: (1) JMVs abandoned on private property for more than 48 hours (carrying civil penalties), (2) JMVs abandoned on private property for more than 72 hours (carrying a minor misdemeanor), and (3) JMVs left on private property for more than 72 hours (carrying a minor misdemeanor). And while the way the ordinance and statutes otherwise define JMVs is materially identical (as discussed below), the Cincinnati ordinance sets out a lengthier list of illustrative "junk" characteristics than the Ohio statutes do. *Compare* Cincinnati Mun. Code § 758-2(3) *with* Ohio Rev. Code § 4513.63(3)–(4).

Based on those differences, none of the three possible types of conflict exist between the municipal ordinance and any of the three Ohio Revised Code provisions Abernathy cites. Start with the "contrary directives" test. An ordinance conflicts with a statute under this test if it "permit[s] that which the statute explicitly forbids or vice versa." *Mendenhall*, 881 N.E.2d at 263. The caselaw emphasizes the need for the state statute to *explicitly* forbid or permit the activity at issue. *See Lima v. Stepleton*, 5 N.E.3d 721, 727–28 (Ohio Ct. App. 2013) (collecting cases). Abernathy's allegations do not demonstrate any such contrary directive between Chapter 758 and Ohio

26

Revised Code §§ 4513.63–65. The primary difference she alleges between the two is that "the [ORC] does not state a cracked windshield, a deflated tire, or [an] invalid license plate is sufficient to make a car a junk motor vehicle," whereas Chapter 758 sweeps cars with those defects into the "junk" category. (Doc. 8, #71).[6] Stated differently, Cincinnati's ordinance arguably defines "junk motor vehicle" more broadly than Ohio law. But the Court is not so sure that is the case. Sure, Chapter 758 lists more defects rendering a car "junk" than Ohio's statute. But that does not mean the Ohio statute "explicitly permits" cars without the Cincinnati-specific defects to remain on the streets. Indeed, the Ohio Revised Code specifies that the list of junk characteristics it provides is not exhaustive. Ohio Rev. Code § 4513.63 (emphasis added) (internal quotations omitted) ("Abandoned junk motor vehicle means any motor vehicle … [that is] [e]xtensively damaged, such damage *including*

---

[6] She also presses two other (unconvincing) differences. The first is that the Ohio Revised Code "states a junk motor vehicle can remain in place if covered, while the [Cincinnati Municipal Code] does not allow the same." (Doc. 6, #51). But that's not quite true. The Cincinnati Municipal Code provides that "[n]o person shall permit a Junk Motor Vehicle to remain *in the open*." Cincinnati Municipal Code § 758-3 (emphasis added). That strikes the Court as a clear statement that Cincinnati only regulates openly visible—i.e., uncovered—junk cars, just like the Ohio Revised Code.

The second alleged difference between the two is that "Chapter 758 does not provide the same due process protections as provided by the statute[s]." (Doc. 6, #51). The Cincinnati ordinance requires city officials to give notice to the vehicle owner, followed by a seven-day period in which the owner can either cure the violation or request a pre-deprivation hearing. Cincinnati Mun. Code § 758-4. Ohio law, on the other hand, requires state officials to give notice to the vehicle owner *after* seizure, followed by a ten-day period in which the owner can reclaim their vehicle. Ohio Rev. Code §§ 4513.61, .63. Though the two due-process schemes are clearly different, they *cannot* conflict with each other because they do not even target the same conduct. *See Mendenhall*, 881 N.E.2d at 263. The one regulates a municipal administrative process, while the other regulates a state administrative process. While the processes *themselves* target the same conduct—junk motor vehicles—the due-process rules structuring those processes do not.

*but not limited to* any of the following: missing wheels, motor, or transmission."). Therefore, it is entirely possible that vehicles considered "junk" under the Cincinnati ordinance for, say, a deflated tire, would also be considered "junk" under the Ohio statute for that same reason. The simple fact that the Ohio statute opts for a catch-all ("extensively damaged") instead of an exhaustive enumeration of every single variation of a "junk" vehicle does not mean that it expressly permits the type of deficiencies that Cincinnati's more comprehensive ordinance prohibits.

And, even though not explicitly noted by Abernathy as a source of conflict, the timing differences between the ordinance and the statutes do not rise to the level of contrary directives. The statutory provision most applicable to Abernathy prohibits JMVs from being left (not abandoned) on private property for over 72 hours. Ohio Rev. Code § 4513.65. The city ordinance, on the other hand, prohibits JMVs from being left on private property for over 48 hours. Cincinnati Mun. Code § 758-2. So a person who has had a JMV on their property for, say, 65 hours would be in breach of the ordinance, but not of the statute. That may seem like an instance of a state statute permitting that which the ordinance forbids. *Mendenhall*, 881 N.E.2d at 263. But it is not. That's because the Ohio statute's prohibition *against* possession of a JMV for more than 72 hours does not explicitly "permit or authorize" the possession of a JMV for less than 72 hours. *Cf. Cincinnati v. Baskin*, 859 N.E.2d 514, 519 (Ohio 2006) (explaining that there is no conflict between an ordinance prohibiting semiautomatic rifle magazines with capacity higher than ten rounds and a statute prohibiting magazines with capacity higher than thirty-one rounds because the latter does not

"permit or authorize" the possession of magazines with capacity between ten and thirty-one rounds). In other words, that the Ohio statute does not penalize possessing a JMV for less than 72 hours, does not mean that the statute confers an affirmative right to possess a JMV during that time. Accordingly, the Cincinnati ordinance does not prohibit what the Ohio statute "permits" by setting a lower time threshold for violators.

Next consider whether the ordinance conflicts impliedly with the state law. Implied conflicts exist when "the [Ohio] General Assembly has indicated that the state statute controls the subject exclusively." *Buckeye Firearm Found., Inc. v. Cincinnati*, 163 N.E.3d 68, 76–77 (Ohio Ct. App. 2020). The statutory provisions here do no such thing. Indeed, the Ohio Revised Code provides that "nothing contained in section[] 4513.63 … shall invalidate the provisions of municipal ordinances … prohibiting the abandonment of motor vehicles on … private property."[7] Ohio Rev. Code § 4513.64(A). By contrast, in every state court opinion this Court has found where a state statute demonstrates exclusive control over the field, the statute expressly provides for that fact. *See, e.g.*, *Schneiderman v. Sesanstein*, 167 N.E. 158, 160 (Ohio 1929) (where the state statute provided that its restrictions "shall not be diminished, restricted or prohibited by an ordinance"); *Lima*, 5 N.E.3d at 731 (where the state statute "expressly exempts" certain activities from regulation that a

---

[7] The Court notes that there is no similar "savings clause" for municipal ordinances with respect to the other two Ohio Revised Code sections with which Abernathy alleges a conflict, Ohio Rev. Code §§ 4513.64–65. But that doesn't matter, because even though those sections don't explicitly leave municipal ordinances untouched, they also don't explicitly provide for exclusive state control over JMVs. *See Schneiderman v. Sesanstein*, 167 N.E. 158, 160 (Ohio 1929).

municipal ordinance purported to impose). Since the statutes at issue here do no such thing, there is no implied conflict.

Turn finally to the last method of showing a conflict that the Ohio Supreme Court has recognized: whether the "municipal ordinance … chang[es] the character of an offense" imposed by state statute. *Mendenhall*, 881 N.E.2d at 264. To change the character of a statutory offense, an ordinance must change the way that offense is classified: for example, from a felony down to a misdemeanor. *City of Cleveland v. Betts*, 154 N.E.2d 917, 919 (Ohio 1958). In cases of simple abandonment of a JMV (i.e., where the abandonment is not willful), the Cincinnati ordinance and statute classify the offense identically: as a civil infraction penalized by confiscation with notice. *Compare* Cincinnati Mun. Code §§ 758-4, -7 *with* Ohio Rev. Code §§ 4513.63. That said, the other two statutory provisions go further by classifying both willful abandonment and simple possession of a JMV for over 72 hours as minor misdemeanors. Ohio Rev. Code §§ 4513.64–65. Though that may seem like a textbook "conflict regarding decriminalization" (as the Cincinnati ordinance would still only impose civil penalties in those cases), *Mendenhall*, 881 N.E.2d at 264, it is not. To hold otherwise would "reflect[] a fundamental misunderstanding of the [Cincinnati] ordinance. The ordinance does not … change the ability of [state officials] to cite offenders for [violations of the Ohio Revised Code]." *Id.* Rather, it "supplements" state law by providing for a municipal penalty "when no [state official] is present" to enforce the state penalty. *Id.* In other words, nothing about the ordinance purports to prevent state officials from enforcing the penalties specified by the Ohio Revised Code; it

simply provides an alternative means for municipal officials to address the problem where the state hasn't. That being the case, the ordinance does not conflict with the statutes, but rather "complements" them. *Id.*

Because the well-pleaded facts of Abernathy's Amended Complaint do not make out the necessary facts to demonstrate a conflict between Cincinnati Municipal Code Chapter 758 and Ohio Revised Code §§ 4513.63–65, the Court dismisses Count Six of Abernathy's Amended Complaint.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** Defendants' Motion to Dismiss Pursuant to Federal Rule 12(b)(6) and (7) (Doc. 7). Specifically, the Court **DISMISSES** Count Three (insofar as it claims a violation of Plaintiff's substantive due process rights, but no further) of Plaintiff Abernathy's Amended Complaint (Doc. 6), but because Abernathy may be able to cure the defect in the count through further allegations, the dismissal shall be **WITHOUT PREJUDICE**. The Court further **DISMISSES** Count Six, and because Abernathy cannot cure the cited defect, the dismissal shall be **WITH PREJUDICE.** Other than that, the Court **DENIES** the Motion. The Court further **ORDERS** Defendants to answer the remaining counts in the Amended Complaint within 14 days of this Opinion and Order's entry.

**SO ORDERED.**

December 3, 2024
_____          _____
**DATE**                                                    **DOUGLAS R. COLE**
                                                                    **UNITED STATES DISTRICT JUDGE**

31